IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HILL-ROM SERVICES, INC.,           )
HILL-ROM COMPANY, INC.,            )
HILLENBRAND INDUSTRIES, INC.,      )
                                   )
           Plaintiffs,             )
                                   )
      v.                           )        1:03CV1227
                                   )
VERSUS TECHNOLOGY, INC.            )
A4 HEALTH SYSTEMS, INC.,           )
HEALTHCARE INFORMATION             )
TECHNOLOGY, INC., SURGICAL         )
INFORMATION SYSTEMS, LLC.,         )
                                   )
           Defendants.             )

                    and

VERSUS TECHNOLOGY, INC.,           )
                                   )
           Plaintiff,              )
                                   )
      v.                           )        1:04CV1116
                                   )
HILLENBRAND INDUSTRIES, INC.,      )
HILL-ROM SERVICES, INC.,           )
HILL-ROM COMPANY, INC.,            )
VISONIC TECHNOLOGIES LTD.,         )
VT AMERICAS, INC., and ELPAS       )
ELECTRO-OPTIC SYSTEMS LTD.,        )
                                   )
           Defendants.             )
                                   )

MEMORANDUM OPINION

TILLEY, Chief Judge

       This suit arises from a dispute between Hill-Rom Services, Inc., Hill-Rom

Company, Inc., and Hillenbrand Industries, Inc. (collectively "Hill-Rom"), and

Versus Technology, Inc. ("Versus").  Currently two separate cases are pending

before this Court:  Case Number 1:03CV1227 ("1227 Case") and Case Number

1:04CV1116 ("1116 Case").  For the foregoing reasons, the pending motions in

the 1227 Case – (1) Hill-Rom's Motion to Dismiss and/or Strike Versus' Sixth

Affirmative Defense and Counterclaim Counts II and V [1227 Case, Doc. #30], and

(2) Hill-Rom's Motion to Amend Complaint to Add Defendant [1227 Case, Doc.

#73] – will be GRANTED.  Additionally, in the 1116 Case: (1) Hill-Rom's Motion to

Dismiss for Failure to Join an Indispensable Party [1116 Case, Doc. #26] is MOOT;

(2) Visonic's Motion to Dismiss for Lack of Personal Jurisdiction [1116 Case, Doc.

#138] will be GRANTED; (3) Hill-Rom's Motion to Dismiss Counts II through VI of

Versus' Complaint [1116 Case, Doc. #140] will be DENIED; (4) Visonic Ltd. and

Visonetix Ltd.'s Motion to Dismiss Party [1116 Case, Doc. #166] will be

GRANTED; and (5) Versus' Motion for Leave to Amend Complaint to Join a

Necessary Party [1116 Case, Doc. #203] will be GRANTED.

I.

    Hillenbrand, Industries, Inc. ("Hillenbrand"), a Delaware corporation with its

principal place of business in Batesville, Indiana, is a publicly traded holding

company.  Defendants Hill-Rom Services and Hill-Rom Company are two of

Hillenbrand's wholly owned subsidiaries.  Both are incorporated in Delaware, with

their principal place of business in Batesville, Indiana.  Hill-Rom Company is a major

supplier – through sales, rentals, and service – of products commonly used in the health care industry, including beds, therapy surfaces, stretchers, furniture, communications systems and headwall systems. For several years, Hill-Rom has also been involved in the sale of "nurse call" systems. "Nurse call" systems are generally associated with hospital beds and are used to provide notification through integrated locating systems during patient emergencies. Specifically, Hill-Rom has marketed and sold the COMposer Communication System, which includes locator badges, and more recently has developed the COMLinx System, which includes or uses the COMLinx Local Positing Module.

Versus Technology is a privately held high-technology company which develops and manufacturers infrared and radio frequency tracking technologies commonly used in the "nurse call" systems. Versus sells its locating systems directly to hospitals and to third-party original equipment manufacturers, such as Hill-Rom. Versus is the owner or exclusive licensee of four patents involved in this lawsuit, specifically: (1) United States Patent 5,027,314 entitled "Apparatus and Method for Positioning Reporting" (the "'314 Patent"); (2) United States Patent 5,572,195 entitled "Sensory and Control System for Local Area Networks (the "'195 Patent"); (3) United States Patent 6,154,139 entitled "Method and System for Locating Subjects within a Tracking Environment" (the "'139 Patent"); and (4) United States Reissue Patent 36,791 entitled "Location System Adapted for Use in Multipath Environments" (the "'791 Patent") (referred to collectively as "Versus

3

Patents").[1]

Visonic is an Israeli holding company located in Tel Aviv, Israel. Visonic owns three companies which manufacture integrated identification and facility management solutions incorporating local positioning, security, access control, and asset management. Elpas Electro-Optic Systems ("Elpas") is one of Visonic's wholly owned subsidiaries. Elpas manufacturers a product known as Elpas Local Positioning System ("Elpas LPS") which is distributed by VT Americas ("VTA") to Hill-Rom for use in Hill-Rom's COMLinx system. VTA, a Delaware corporation with its place of business in Bloomfield, Connecticut, is a wholly owned subsidiary of Elpas and is the sole distributor of Elpas LPS in the United States.

On December 30, 2003, Hill-Rom Services filed a Complaint in the Middle District of North Carolina, alleging patent infringement and naming Versus as well as three of its distributers, A4 Health Systems, Inc. ("A4"), Healthcare Information Technology, Inc. ("Healthcare IT"), and Surgical Information Systems, LLC ("SIS") as defendants.[2] According to Hill-Rom, Versus and its distributers infringed on two of its patents – (1) United States Patent Reexamination Certificate No. RE 35,035

---

[1] Versus is the owner of the '139 and '314 Patents and the exclusive licensee of the '195 and '791 Patents.

[2] Hill-Rom alleges that A4 is a Delaware corporation with its principal place of business in Cary, North Carolina (Am. Compl. ¶3), Healthcare IT is a North Carolina corporation with its principal place of business in Charlotte, North Carolina (Am. Compl. ¶4), and SIS is a Georgia limited liability company with its principal place of business is Alpharetta, Georgia (Am. Compl. ¶5).

4

(the "'035 Patent") and (2) United States Patent No. 6,462,656 (the "'656 Patent") – by "making, selling, offering for sale and using locator systems and methods embodying at least claims 27 and 31 of the '035 patents," (Am. Compl. ¶12), and "making, selling, offering for sale and using locator systems, methods and software embodying at least claims 21, 26, 75, and 79 of the '656 patent" (Am. Compl. ¶13). According to Hill-Rom, it filed the complaint in this Court because Versus and one of its distributers installed an infringing system at Duke University Hospital located in the Middle District of North Carolina.[3]

On March 15, 2004 Versus filed a Complaint in the U.S. District Court for the Western District of Michigan (the 1116 Case). According to Versus, in early 2000, it began negotiating a relationship with Hill-Rom in which (1) Versus would grant Hill-Rom a license to use Versus' patents which Hill-Rom was then infringing; (2) Hill-Rom would acquire an equity interest in Versus; (3) Versus and Hill-Rom would execute a development agreement, pursuant to which Versus would overlay its system on the existing Hill-Rom "nurse call" system and would develop new products for Hill-Rom over a five-year period; and (4) the parties would execute a supply agreement providing that Versus would be Hill-Rom's exclusive supplier of

---

[3] The Complaint, however, was not immediately served on Versus. Rather on January 6, 2004, a copy of the Complaint and a draft settlement agreement outlining Hill-Rom's infringement claim and damages was sent to Versus' President and CEO. However, after several exchanges of correspondence, and a failed meeting between the parties on or about March 5, 2004, the Complaint was served on Versus.

locating products for five years.  Versus alleges that at Hill-Rom's urging and upon

repeated reassurances by Hill-Rom that it would subsequently execute the five-year

supply and development agreements, the License Agreement and Stock Purchase

Agreement were executed on September 1, 2000.[4]  Versus claims, however,  that

contrary to these representations, Hill-Rom then refused to finalize the remaining

agreements and instead entered into an agreement to purchase the locating

technology (hardware and software) for its COMLinx Local Positing Module from

Visonic and/or its subsidiaries.[5]

Count I of the Amended Complaint in the 1116 Case alleges that Defendants

Hill-Rom and Visonic have infringed at least one claim of each of the '314, '195,

'139, and '791 Patents by making, using, selling and/or offering to sell COMLinx

outside of the scope of the License Agreement.  Versus also alleges claims of

fraudulent misrepresentation, innocent misrepresentation, breach of contract, and

promissory estoppel against Hill-Rom based on its failure to finalize the remaining

agreements.  Count VI alleges a claim of patent infringement in the event the

License Agreement is rescinded.  Finally, Count VIII alleges various antitrust

violations by Hill-Rom.

---

[4] The License Agreement granted Hill-Rom a non-exclusive license over
Versus' Patents in exchange for a payment of $1,000,000.  The Stock Agreement,
entered into on the same date, provided for sale of Versus' stock to Hill-Rom in
return for $1,325,000.

[5] Visonic contends that it was not a party to the agreement, although its
subsidiaries, Elpas and VTA were parties to the agreement.

Case 1:04-cv-01116-NCT   Document 219-2   Filed 06/02/06   Page 6 of 35

Hill-Rom Services filed an Amended Complaint on April 7, 2004 in the 1227 Case adding Hill-Rom Company and Hillenbrand as plaintiffs and adding five declaratory judgment claims [1227 Case, Doc. #5]. Hill-Rom now seeks a declaration that: (1) Hill-Rom is not infringing Versus' patents and the License Agreement released any claims for infringement against Hill-Rom; (2) the License Agreement is not rescindable and Hill-Rom has not breached the License Agreement; (3) Hill-Rom never made any enforceable agreement with or representations to Versus that were not reduced to writing and signed by the parties thereto; (4) Versus has no claim against Hill-Rom for misrepresentation, innocent misrepresentation, or promissory estoppel; and (5) Hill-Rom has not committed any antitrust violation against Versus.

Upon Hill-Rom's motion, the Honorable Gordon J. Quist of the Western District of Michigan applied the "first-to-file" rule and determined that the 1227 Case in North Carolina was filed first. Thus, on November 23, 2004, Judge Quist entered an Order transferring the 1116 Case to this Court for determination with the 1227 Case [1116 Case, Doc. #126]. At that time, Judge Quist also granted Versus' motion to amend its Complaint. On November 23, 2004, Versus filed a Second Amended and Supplemental Complaint [1116 Case, Doc. #128] which provided additional factual allegations on Versus' fraud and misrepresentation claims, added Elpas as a defendant, and identified the EIRIS Local Positioning System ("EIRIS LPS") as an infringing product in the district of Michigan.

7

II.

On July 12, 2005, a Memorandum Order was entered directing the parties to show why the 1227 Case and the 1116 Case should not be consolidated into a single case before this Court [1227 Case, Doc. #62]. Hill-Rom filed a Response to this Order [1227 Case, Doc. #67] stating it had no objection to consolidation of the claims for purposes of discovery, but wished to reserve its position to have the cases heard separately at trial. Versus also filed a Response to the Order, [1227 Case, Doc. #68], opposing consolidation because it would "unduly burden certain Defendants in this case who are not parties to the Versus case,"[6] and would force additional disclosure requirements upon Defendants which will "compromise Defendants' arm's length contractual relationships." (Versus' Res. 1.)

Consolidation of actions pending before the court is permitted pursuant to Federal Rule of Civil Procedure 42(a) when they involve a common question of law or fact. Fed. R. Civ. P. 42(a); see also A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 933 (4th Cir. 1977). After review of the filings in the instant cases, it appears that they involve many of the same parties and contain common questions of law and fact. Additionally, the parties have entered into a Consolidated Rule 26(f) Report governing discovery in both cases [1116 Case, Doc. #191]. Any additional burden that consolidation would place on

---

[6] Specifically, Versus' distributers A4, Healthcare IT and SIS are not parties to the 1116 Case.

defendants A4, Healthcare IT, and SIS is minimal when compared to the burden on the remaining parties and this Court in maintaining two separate cases addressing the same claims. Additionally, any confidentiality concerns between the parties do not require separate cases, but rather, can be addressed through a protective order.[7] Thus, pursuant to Rule 42(a), the 1227 Case and the 1116 Case will be consolidated up to the point of trial. Fed. R. Civ. P. 42(a); see also Tidewater Constr. Co., 559 F.2d at 933 ("District courts have broad discretion under [Fed. R. Civ. P.] 42(a) to consolidate causes pending in the same district."). At the time of trial, a decision will be made whether all claims will be tried together, bifurcated in some way, or heard by separate juries.

III.

Prior to the transfer of the 1116 Case to the Middle District of North Carolina, Hill-Rom filed a Motion to Dismiss that case, alleging Failure to Join an Indispensable Party [1116 Case, Doc. #26].[8] Hill-Rom contends that Versus' claims for infringement of the '195 and '791 Patents should be dismissed because Versus does not own either of these patents. Rather, Versus has an exclusive license for these patents, granting it all the rights of ownership until January 2007, at which time the ownership interest will revert to its assignee, Freshloc

_____

[7] In fact, a Protective Order was recently entered in the 1116 Case [116 Case, Doc. #204].

[8] In his November 23, 2004 Order transferring venue [1116 Case, Doc. #126], Judge Quist left the decision on this motion to this Court.

9

Technologies ("Freshloc").[9]

Initially, Versus opposed Hill-Rom's motion contending that an exclusive license of a patent is an assignment under Federal Circuit precedent,[10] making the joinder of Freshloc unnecessary. To support its position Versus cited Federal Circuit precedent holding that an exclusive licensee has standing to sue for patent infringement without joinder of the licensor. See Fieldturf, Inc. v. SW Recreational Indus., 357 F.3d 1266, 1268 (Fed. Cir. 2004). Although it admitted the Federal Circuit had not yet ruled on whether an exclusive license with a termination date or "hard reversionary interest" is distinguishable from an exclusive license without such a provision, Versus argued that the hard reversionary interest did not preclude its right to sue without joinder of Freshloc.

However, while Hill-Rom's motion was awaiting decision by this Court, the Federal Circuit entered its opinion in Aspex Eyewear Inc. v. Miracle Optics, Inc., 434 F.3d 1336 (Fed. Cir. 2006). In Aspex Eyewear, the court clarified whether an exclusive patent licensee for less than the full term of the patent can maintain an infringement suit on the patent without joining the patent owner. Id. at 1343-44. The Federal Circuit held that an exclusive license with a hard termination date does

---

[9] At this point, Versus will retain a non-exclusive license to the '195 and '791 Patents.

[10] "The opinions of the federal circuit are binding on federal district courts in matters concerning patent law." Hill Phoenix, Inc. v. Systematic Refrigeration, Inc., 117 F. Supp. 2d 508, 511 n.3 (E.D. Va. 2000) (citing Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1573 (Fed. Cir. 1984) (per curiam)).

10

not transfer all of the interests in the patent to the licensee and thus it is not an assignment of the patent. Id. ("By having the rights for only a limited portion of the patent term, [the licensee] simply did not own the patent."). The court concluded that because the license is not an assignment, the owner of the patent license is a necessary party to any lawsuit brought for infringement of that patent. See id.

On January 17, 2006, Hill-Rom filed an Addendum to its Motion to Dismiss [1116 Case, Doc. #202] alerting the Court of the Federal Circuit's opinion in Aspex Eyewear. In response, on January 25, 2006, Versus filed a Motion for Leave to Amend the Complaint [1116 Case, Doc. #203] seeking to join FreshLoc Technologies as a plaintiff in light of the Aspex Eyewear decision. Hill-Rom opposes Versus' motion suggesting that it is untimely and would cause unreasonable delay and uncertainty in the case.

It is clear, however, that prior to January of 2006, the issue of whether Freshloc was a necessary party to this action was unsettled. In fact, in Aspex Eyewear, the Federal Circuit specifically noted that this issue was previously undecided: "In Prima Tek II, we expressly stated that we were leaving unanswered the question whether an agreement with a hard termination date could convey to a licensee standing to sue." Aspex Eyewear, 434 F.3d at 1343 n.6 (citing Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1378 (Fed. Cir. 2000)). Versus' decision not to join Freshloc prior to Aspex Eyewear was therefore not unreasonable or in

11

bad faith, but rather based on its anticipation of how the Federal Circuit would interpret the issue.  Once Versus was made aware that a decision had been entered contrary to its position, it immediately contacted Freshloc, received consent for service, and moved to join Freshloc as a necessary party.

Because there is no evidence that Versus' actions were taken in an attempt to manipulate the case or cause undue delay, Versus motion to join the owner of the patent, Freshloc Technologies, as a necessary plaintiff to this action will be granted.  Hill-Rom's Motion to Dismiss for failure to join a necessary party is therefore moot.

IV.

Hill-Rom also filed a Motion to Dismiss and/or Strike Defendants' Sixth Affirmative Defense and Counterclaim Counts II and V on May 19, 2004 in the 1227 Case [1227 Case, Doc. #30].  Hill-Rom contends that Defendants' Answer and Counterclaims fail to plead inequitable conduct with the particularity required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) provides an exception to notice pleading for claims sounding in fraud:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  An allegation of inequitable conduct before the United States Patent and Trademark Office ("PTO"),

12

as is made by Versus, is subject to the enhanced pleading requirements in 9(b).[11]

See Ferguson Beauregard/Logic Controls v. Mega Sys., LLC, 350 F.3d 1327, 1344

(Fed. Cir. 2003) ("[I]nequitable conduct, while a broader concept than fraud, must

be pled with particularity."); Point DX Inc. v. Voxar Ltd., 2002 WL 31189696, at

*1 (M.D.N.C. Sept. 20, 2002) ("Like an allegation of fraud, an allegation of

inequitable conduct before the PTO is subject to the enhanced pleading

requirements of Rule 9(b)).  A claim of inequitable conduct generally must state the

"time, place, and contents of the alleged fraudulent misrepresentation, as well as

the identity of each person making the misrepresentation and what was obtained

thereby."  Breeden v. Richmond Cmty Coll., 171 F.R.D. 189, 195 (M.D.N.C 1997);

see also Akteibolag v. Genpharm, Inc., 2000 WL 257119, at *1 (S.D.N.Y. Mar. 8,

2000) (stating pleadings of inequitable conduct generally require "an identification

of the statements alleged to be fraudulent, the speaker, where and when the

statements were made and an explanation of why the statements were

fraudulent").  The requirement found in 9(b) "is intended to give parties against

whom a charge of inequitable conduct is made specific notice of the particular

statements or omissions constituting the inequitable conduct, which thereby

---

[11] A claim of inequitable conduct arises when a party breaches the duty of
candor, good faith and honesty required in all prosecutions of patent applications
before the PTO.  Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir.
1995).  A party claiming inequitable conduct must establish a failure to disclose
material information combined with an intent to deceive.  Akteibolag v. Genpharm,
Inc., 2000 WL 257119, at *1 (S.D.N.Y. Mar. 8, 2000).

13

ensure that they have sufficient information to formulate an appropriate response."

Point DX Inc., 2002 WL 31189696, at *1 (citations omitted); see also Harrison v.

Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (stating

purposes of Rule 9(b)).  Hill-Rom asserts that Defendants' answer and

counterclaims fail to give any specifics concerning the inequitable conduct they

allege.

> Defendants' Sixth Affirmative Defense reads:
>
> The claims asserted in the Amended Complaint are barred, in whole or
> in part, because the 035 and the 656 patents are invalid and/or
> unenforceable because Plaintiff or its predecessors in interest engaged
> in inequitable conduct in the prosecution of the 035 and the 656
> patents. (Defs.' Answer ¶ 23.)

Similarly, Defendants' Counterclaim Counts II and V state only:  "The [035/656]

patent is unenforceable because of, among other things, Plaintiff's inequitable

conduct is [sic] prosecuting the patent, and its misuse of its patents." (Defs.'

Answer ¶¶ 30 & 37.)

Defendants fail to identify who engaged in the inequitable conduct, what the

alleged misrepresentation was, or when it was made.  Nothing in these allegations

provides information sufficient for Hill-Rom to formulate a response.  See Point DX

Inc., 2002 WL 31189696, at *1 (dismissing claims because they gave Plaintiff's

no notice of what the misstatements were or who made them).  Because

Defendants' pleadings clearly fall short of the particularity required by Rule 9(b),

Defendants' Sixth Affirmative Defense and Counterclaims II and V will be

dismissed.[12]

V.

A.

Visonic moves for dismissal of all claims against it for lack of personal jurisdiction in this Court [1116 Case, Doc. #138].[13] <u>See</u> 28 U.S.C. § 1391.  When such a motion is made, the plaintiff bears the ultimate burden to show by a preponderance of the evidence that personal jurisdiction is proper as to each defendant.  <u>Ward v. Wavy Broad., LLC</u>, 2003 WL 715910, at *2 (M.D.N.C. Feb. 25, 2003) (citing <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir. 1989)).  In considering a motion to dismiss for lack of personal jurisdiction, a court may either evaluate the motion on the basis of the pleadings and affidavits, postpone the decision and allow discovery on the issue, or hold an evidentiary hearing.  <u>Rich v. KIS Cal., Inc.</u>, 121 F.R.D. 254, 259 (M.D.N.C. 1988); <u>see also</u> <u>Combs v. Bakker</u>,

---

[12] Defendants' claim that Hill-Rom's motion is barred by the doctrine of judicial estoppel is misplaced.  Hill-Rom's claim is a question of law, specifically the pleading requirements of Federal Rule of Civil Procedure 9(b), not fact.  <u>See</u> <u>Havird Oil Co. v. Marathon Oil Co.</u>, 149 F.3d 283, 292 (4th Cir. 1998) (explaining judicial estoppel applies only in situations were (1) the party to be estopped is advancing an assertion that is inconsistent with a position taken during a previous litigation; (2) *the position is one of fact, rather than law or legal theory*; (3) the prior position was accepted by the court in the first proceeding; and (4) the party to be estopped acted intentionally, not inadvertently) (emphasis added).

[13] Visonic also filed a Motion to Dismiss requesting dismissal of Versus claims for lack of personal jurisdiction in Michigan [1116 Case, Doc. #59].  However, because this case has been transferred to North Carolina in its entirety, Visonic's previous Motion to Dismiss is now MOOT.

15

886 F.2d at 676; Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). When personal jurisdiction is examined only on the basis of motion papers – including affidavits, legal memoranda, and the allegations of the complaint – the plaintiff is required only to make a *prima facie* showing of personal jurisdiction. Combs, 886 F.2d at 676. In determining whether a *prima facie* showing has been made "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. In patent cases, district courts apply the law of the Federal Circuit to determine personal jurisdiction. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994); Akeva L.L.C. v. Mizuno Corp., 199 F. Supp. 2d 336, 338 (M.D.N.C. 2002).

Versus contends that personal jurisdiction over Visonic in North Carolina is based on the acts of Visonic's subsidiaries, Elpas and VTA. Specifically, Versus claims that because Elpas and VTA do not challenge personal jurisdiction in North Carolina and Visonic allegedly exercises control over its subsidiaries, jurisdiction should be imputed to Visonic as well. In support of this contention, Versus points to Visonic's Prospectus which identifies the employees of Elpas and VTA as Visonic's employees, describes the subsidiaries as "companies over which the Company exercises control . . . and whose accounts are consolidated with those of the Company" (Versus' Opp. to Visonic's Mot. to Dismiss, Ex. A, 32), and "advertises and promotes a subset of Visonic's offering, including, *inter alia*, an

16

'Elpas Product Line' of Readers, Badges and Tags, System Accessories, Displays, and EIRIS Software" (Versus' Opp. to Visonic's Mot. to Dismiss, Ex. A, 10). Additionally, Versus contends that Visonic was directly involved in negotiating the agreement with Hill-Rom in North Carolina because Israel Radomsky, the CEO and President of both Visonic and Elpas, was involved in the negotiation and execution of that agreement.

Visonic, however, contends that it is not subject to personal jurisdiction in North Carolina. Visonic asserts that it does not manufacture or sell any infringing product or any other product in North Carolina. Additionally, Visonic asserts that it does not exercise direct control over the day-to-day activities of either Elpas or VTA but rather retains control only over the setting of the strategic policy of its subsidiaries. Finally, Visonic disputes Versus' claim that it participated in the contract negotiations with Hill-Rom in North Carolina. Rather, Visonic explains that Mr. Radomsky serves as the President and CEO of Elpas as well as the President and CEO of Visonic, and his participation in the negotiations and execution of the supply agreement between Hill-Rom, Elpas, and VTA was on behalf of Elpas.[14]

Versus relies primarily on Akeva L.L.C. v. Mizuno Corp., to support its contention that personal jurisdiction exists over Visonic. 199 F. Supp. 2d at 336. In Akeva, this Court (Osteen, J.), applying the law of the Federal Circuit, held that minimum contacts existed between a Japanese corporation and North Carolina

_____

[14] Visonic also states that Elpas paid for Mr. Radomsky's travel expenses.

17

sufficient to satisfy due process.  Id. at 341.  The Japanese corporation, Mizuno

was found to be subject to personal jurisdiction in North Carolina because of the

actions of its subsidiary, Mizuno USA, which manufactured and marketed the

allegedly infringing product.  Id. at 340.  The court noted that Mizuno "does

participate to some degree in the Mizuno USA's manufacture and marketing of the

allegedly infringing products," and held that because it created a distribution

channel to exploit the North American market through its subsidiary, Mizuno USA,

minimum contacts were present.[15]  Id. at 341; see also Beverly Hills, 21 F.3d at

1566 (finding personal jurisdiction over Chinese corporation that made ceiling fans

that were then imported by a New Jersey corporation because "[t]he defendants,

acting in consort, placed the accused fan in the stream of commerce, they knew

the likely destination of the products, and their conduct and connections with the

forum state were such that they should have reasonably have anticipated being

brought into court there").

---

[15] Specifically, the court noted that although Mizuno does not ship goods to
Mizuno USA, Mizuno's trademarks and technical information, including any
patents, are licensed to Mizuno USA for use in the North and South American
markets.  Id.  Additionally:

> [t]wo of Mizuno's employees are assigned to Mizuno USA's Georgia
> headquarters and provide marketing and product development
> assistance.  Other Mizuno employees travel regularly to Georgia, and
> sometimes to other parts of the United States, to assist Mizuno USA.
> In addition, Mizuno and its subsidiaries provide manufacturing support
> to Mizuno USA outside of the United States.  Most relevant here,
> Mizuno USA uses Mizuno's Hong Kong subsidiary to monitor the
> Chinese factories which are contracted to manufacture the allegedly
> infringing athletic shoes for Mizuno USA. Id.

18

Similarly, In <u>Dainippon Screen Manufacturing Co. v. CFMT, Inc.</u>, 142 F.3d 1266 (Fed. Cir. 1998), the Federal Circuit held that personal jurisdiction over a holding company was proper when the holding company exercised sufficient control over its subsidiary.  <u>Id.</u> at 1271.  The holding company in <u>Dainippon Screen</u> licensed its subsidiary to make, use, and sell products covered by its patents and from that agreement derived substantial licensing revenues.  <u>Id.</u>  The holding company also had exclusive authority to negotiate any sublicense and instigate litigation regarding the patents.  <u>Id.</u> at 1270.  Additionally, the holding companies' officers, although they held positions at both the parent and its subsidiary, made representations with regard to the infringement that "could only have been made on behalf of the [parent holding company]."  <u>Id.</u> at 1270.

The facts of both <u>Akeva</u> and <u>Dainippon Screen</u>, however, are distinguishable from this case.  Here, Versus has produced no evidence that Visonic exercises control over the activities of Elpas or VTA[16] or that Visonic oversees Elpas'

_____

[16] Versus reliance on Visonic's statement in its Prospectus that it "controls" its subsidiaries is misplaced.  The Prospectus clearly defines "controls" as "The power to govern the financial and operating policies of an enterprise so as to obtain benefits from its activities." (Visonic 2004 Prospectus, 32 (citing International Accounting Standards 27.4).)  This statement, however, discusses only policy setting and financial oversight and does not state that Visonic is involved in the "day-to-day" activities of its subsidiaries or the manufacturing of the allegedly infringing product.  <u>See</u> <u>Conwed Corp. v. R.J. Reynolds Tobacco Co.</u>, 1999 U.S. Dist. LEXIS 9641, at *10-14 (D. Minn. April 1, 1999) (finding no personal jurisdiction over a tobacco holding company even though its was involved in "strategic planning" for its subsidiaries because it did not manufacture or distribute cigarettes).

manufacturing or VTA's distribution of the allegedly infringing product.  See, e.g., Red Wing Shoe Co. v. Hockerson-Halbertstadt, Inc., 148 F.3d 1355, 1357, 1359-62 (Fed. Cir. 1998) (dismissing patent holder defendant for lack of personal jurisdiction because it did not manufacture anything itself, but rather licensed its patents to independent distributers over which it had no control); Benjamin Obdyke Inc. v. Owens Corning, 2004 WL 870701, at *2-3 (E.D. Pa. March 29, 2004) (dismissing holding company from lawsuit because its relationship to the infringing product which was manufactured by its subsidiary was "too attenuated to confer personal jurisdiction").

There is also no evidence that Visonic had control over Elpas' or VTA's entrance into the agreement with Hill-Rom which gave rise to Versus' claims of patent infringement.  Although Visonic shares a president and CEO with Elpas, Visonic was not a party to that contract, nor is there any evidence that Mr. Radomsky's participation in the agreement was on behalf of Visonic.  Cf. Dainippon Screen, 142 F.3d at 1270 (acknowledging the ability of agents to hold positions at both a parent and subsidiary, but finding personal jurisdiction over parent because the evidence showed the agents' activities were on behalf of the parent and not the subsidiary).  Additionally, although Visonic advertises the products produced by its subsidiaries, both its website and other promotional materials are carefully worded to maintain the separate identities of the corporate

entities.[17]

Because Versus has not shown that Visonic maintains control over either Elpas or VTA sufficient to impute personal jurisdiction in North Carolina, Visonic will be dismissed for lack of personal jurisdiction.[18]

B.

In the alternative, Versus contends that jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides that a federal court may exercise jurisdiction in cases "arising under federal law" when the defendant is not subject to personal jurisdiction in any state court, but has contacts with the United States as a whole. Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum

---

[17] For example, Visonic's website (www.visonic.com) clearly indicates that the U.S. market is administered by it subsidiaries. Each reference to specific products on the Visonic website is accompanied by an identification of the corresponding subsidiary which manufactures that product making it clear that these are not Visonic products. Additionally, the prospectus identifies Visonic as the "holding company" and identifies Elpas and VTA as separate subsidiaries of Visonic.

[18] Although it is not necessary to pierce the corporate veil to find personal jurisdiction over a parent company defendant, see Akeva, 199 F. Supp. 2d at 341, it is worth noting that Versus has provided no evidence that Visonic and Elpas failed to maintain separate corporate entities, that Visonic controlled the day-to-day activities of Elpas or VTA, or that Elpas was under capitalized. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 349-50 (4th Cir. 1998) (explaining that North Carolina requires a showing of inadequate capitalization, disregard of corporate formalities, parent's day-to day involvement in operations of subsidy, or parent's subsidiaries are excessively fragmented into separate corporations to support piercing of the corporate veil).

21

Factory," 283 F.3d 208, 215 (4th Cir. 2002).[19]  However, "[a] plaintiff who seeks

to invoke Rule 4(k)(2) as a basis for jurisdiction must show that (1) the claim

'arise[s] under federal law;' (2) the defendant is 'not subject to the jurisdiction of

the courts of general jurisdiction of any state;' and (3) the court's exercise of

jurisdiction would be 'consistent with the Constitution and laws of the United

States.'" Id. (citing Fed. R. Civ. P. 4(k)(2)).

It is undisputed that patent claims "arise under" federal law.  However, for

jurisdiction over Visonic to be proper under Rule 4(k)(2), Versus must also

demonstrate that Visonic is not subject to general jurisdiction in *any* state and that

Visonic's contacts with the United States as a whole support the exercise of

jurisdiction consistent with the Constitution and law of the United States.  Id.

(citing United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 41, 45 (1st Cir.

1999); Fed. R. Civ. P. 4(k)(2) advisory committee note).  Versus has failed to

provide evidence of either.

First, Versus has failed to show that Visonic is not subject to personal

jurisdiction in any state.  See Saudi v. Northrop Grumman Corp., 221 F.R.D. 452,

457-58 (E.D. Va. 2004) ("The Plaintiff bears the burden of proving that [the

Defendant] is not subject to the general jurisdiction of any state by a

---

[19] Visonic's contention, that this argument is inconsistent with Versus' claim
that personal jurisdiction over Visonic is proper in North Carolina, is flawed.  "[I]t is
generally permissible for a litigant to present inconsistent alternate positions in a
case."  Base Metal Trading, 283 F.3d at 215.

22

preponderance of the evidence.") (citing <u>Combs</u>, 886 F.2d at 676).  Visonic suggests that it may be subject to personal jurisdiction in Connecticut.  Indeed, Visonic's website lists a Bloomfield, Connecticut address as its North American location and its subsidiaries are located in Connecticut.  <u>See</u> <u>Saudi</u>, 221 F.R.D. at 457-58 (finding that defendant's maintenance of an office for service in New York and its business activities in New Jersey suggest that defendant *might* be subject to the general jurisdiction of the courts in those states under Rule 4(k)(2)).  Versus, however, responds only that Visonic should not be permitted to argue it is not subject to jurisdiction in North Carolina because of its subsidiaries, but is subject to personal jurisdiction in Connecticut because of those same subsidiaries.  This contention, however, ignores the distinction between specific and general jurisdiction.  Although sufficient control by Visonic over its subsidiaries was not found to support imputing specific jurisdiction in North Carolina, it is entirely possible that Visonic's contacts with its subsidiaries combined with its identification of its offices there, might be sufficient contacts with Connecticut to support a finding of general jurisdiction.  <u>See</u> <u>Saudi v. Northrop Grumman Corp.</u>, 427 F.3d 271, 276 (4th Cir. 2005) (explaining general jurisdiction is available when a defendants contacts with the forum are "continuous and systematic").  Thus, Versus has failed to meet is burden of proving Visonic is not subject to personal jurisdiction in any state.

Second, Versus has failed to proffer sufficient evidence to demonstrate that

Visonic's contacts with the United States as a whole are sufficient to satisfy due process. Versus asserts only "Visonic has sufficient interaction with the U.S. market, including its control over its U.S. subsidiaries, to more than satisfy the Due Process requirements underlying rule 4(k)(2)." (Versus' Opp'n to Mot. to Dismiss 15.) However, besides its status as the holding company for Elpas and its subsidiary VTA, see Saudi, 427 F.3d at 276 (holding that the location of a subsidiary in the United States was not sufficient to show "continuous and systematic contacts" with the United States under Rule 4(k)(2) because it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity), Versus has provided no evidence that Visonic's contacts with the United States are constitutionally sufficient. See Base Metal Trading, 283 F.3d at 215-16 (holding that plaintiff's unsubstantiated statements of extensive business contacts in the United States are insufficient when they offer no concrete evidence of what those business transactions are); Saudi, 427 F.3d at 276 ("[Plaintiff] provides virtually no evidence that [defendant] maintains a continuous presence in the United States, and instead offers only isolated contacts with Texas and New Jersey.").

Therefore, Versus has failed to satisfy the requirements of Rule 4(k)(2), and Visonic will be dismissed as a party to this case.

VI.

Hill-Rom also moves for dismissal of Counts II-VI of Versus' Second

24

Amended Complaint for failure to state claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) [1116 Case, Doc. #141].[20]

A.

Counts II, III, IV and V of the Amended Complaint respectively allege fraudulent misrepresentation, innocent misrepresentation, breach of contract, and promissory estoppel, all stemming from the negotiation and execution of the Non-Exclusive Patent License Agreement.[21]  Hill-Rom, however, contends that these claims are barred by the written merger/integration clause contained in the License Agreement because they are all based on alleged contract terms and agreements not contained in the License Agreement.

To determine whether the terms of the License Agreement bar Versus' claims in Counts II-VI, the Court must first determine which state's law is to be applied to interpret the terms of the contract.  Although both parties assume that Michigan law applies, it is not clear from the agreement or the Complaint that this assumption is correct.

_____

[20] Hill-Rom previously filed a Motion to Dismiss Counts II, III, and IV of Versus' Complaint [1116 Case, Doc. #19].  However, upon leave from Judge Quist, Versus filed a Second Amended and Supplemental Complaint curing the alleged deficiencies in Counts II and III.  Additionally, Hill-Rom reasserted its request that Count IV be dismissed in its subsequent Motion to Dismiss.  Thus, Hill-Rom's initial Motion to Dismiss Count II, III, and IV is now MOOT.

[21] Counts II, III, IV and V of the Amended Complaint in the 1116 Case are the same as Hill-Rom's Declaratory Judgment Counts III, IV and V in the Amended Complaint in the 1227 Case.

25

A federal court sitting in diversity applies the substantive law of the state in which it sits, including the state's choice-of-law rules. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79, 58 S. Ct. 817 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020 (1941) (observing that a forum state's choice-of-law rules are substantive); Volvo Const. Equip. N.A., Inc. v. CLM Equip. Co., 386 F.3d 581, 599-600 (4th Cir. 2004). Generally, when a case is transferred from one federal court to another pursuant to 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules that the transferor court would have applied. See Van Dusen v. Barrack, 376 U.S. 612, 632-37, 84 S. Ct. 805 (1964); Volvo, 386 F.3d at 600. However, in Volvo Construction Equipment North America, Inc., the Fourth Circuit distinguished transfer for the convenience of the witnesses pursuant to § 1404 from cases like the present where transfer is made pursuant to the first-filed doctrine. Id. at 600. Although the Fourth Circuit did not reach the issue because it determined that both forum's choice-of-law rules were identical, the Volvo opinion strongly suggests application of choice-of-law rules of the forum where the litigation was first filed is proper. Id. at 600-01 (noting the necessity of applying only one state's law and concluding "in the interest of simplicity, and because it will not affect the outcome of this proceeding, we will approach this dispute through the prism of North Carolina's choice-of-law rules"). Because, in this case, the 1227 Case was first filed in North Carolina, North Carolina choice-of-law rules will be applied to determine which law governs the

26

contract between the parties.

Hill-Rom's motion to dismiss states that Michigan law controls the interpretation of the License Agreement between the parties. (Hill-Rom's Mot. to Dismiss 7.) To support this contention, however, Hill-Rom cites only to a choice-of-law provision located in the Stock Purchase Agreement. (Hill-Rom's Mot. to Dismiss 3.) Under North Carolina law, "[t]he parties' choice of law is generally binding on the interpreting court as long as they had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of the state or otherwise applicable law." Torres v. McClain, 535 S.E.2d 623, 625 (N.C. Ct. App. 2000) (internal citations omitted) (citing Restatement (Second) of Conflict of Laws § 187 (1971)); see also Volvo, 386 F.3d at 600-01. However, although the choice-of-law provision in the Stock Purchase Agreement identifies Michigan Law as governing that agreement, there is not a similar provision in the License Agreement. Additionally, there is no language in either agreement suggesting that the choice of law provision of one would govern the other. Thus, the License Agreement must be viewed as not containing a choice-of-law provision.

In the absence of a choice-of-law provision in the contract, the "validity and interpretation of a contract is generally governed by the law of the state in which the contract was formed." See Rizoti v. Plemmons, 2003 WL 22871676, at *2 (4th Cir. Dec. 5, 2003) (citing Tanglewood Land Co. V. Byrd, 261 S.E.2d 655,

27

656 (N.C. 1980)).[22]  This traditionally involves an analysis of where the last act that made the contract binding was performed.  See Fortune Ins. Co. v. Owens, 526 S.E.2d 463, 466 (N.C. 2000) ("[The principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred . . . controls the interpretation of the contract.").  The place where the last act was performed is determined by the "place at which the last act was done by either of the parties essential to a meeting of the minds."  Key Motorsports, Inc. v. Speedvision Network, L.L.C., 40 F. Supp. 2d 344, 347 (M.D.N.C. 1999) (quoting Fast v. Gulley, 155 S.E.2d 507, 510 (N.C. 1967)).  Here, Versus, a Delaware corporation with its principle place of business in Michigan, alleges breach of a contract by Hill-Rom, a Delaware corporation located in Indiana.  Additionally, the Complaint mentions that some negotiations of the contract took place at Hill-Rom's North Carolina location.  However, the record fails to provide any more information as to where the last act essential to a meeting of the minds took place by any of the parties.  Although the signatures on the License Agreement are contained on separate pages, suggesting it was signed at different times and/or locations, neither signature contains any accompanying date, time, or location.  Without such information, it is not possible to determine where the

---

[22] This general rule, however, does not apply when "a contract is to be performed *wholly* outside of the state in which the contract was made . . . In that circumstance the law of the place of performance governs."  Rizoti, 2003 WL 22871676, at *2 (citing Cocke v. Duke Univ., 131 S.E.2d 909, 913 (N.C. 1963)).

contract was "formed" under North Carolina's choice-of-law rules.

The North Carolina choice-of-law rules applicable to tort claims, such as Versus claims of fraudulent and innocent misrepresentation, differs from that applicable to contract claims. See Brendle v. General Tile & Rubber Co., 408 F.2d 116, 117 n.3 (4th Cir. 1969). In tort claims, North Carolina adheres to the doctrine of *lex loci delicti* which provides that the law of the "place of the wrong" controls and the place of the wrong is the locale in which "the last event necessary to make a defendant liable for an alleged tort occurs." Id.; accord McElmurry v. Alex Fergusson, Inc., 2006 WL 572330, at *10 (M.D.N.C. March 8, 2006). Here, the last event necessary to render Hill-Rom liable, the financial injury incurred by Versus as a result of Hill-Rom's alleged infringement, occurred in Michigan where Versus is based. McElmurry, 2006 WL 572330, at *10 (holding that because plaintiff's economic loss was felt in North Carolina, North Carolina law would apply) (citing ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983) (noting that financial injuries sustained by "a North Carolina corporation with its principle place of business in North Carolina . . . were sustained in the state of North Carolina")). Thus, Michigan law will be applied to determine whether Versus has stated a claim against Hill-Rom for fraudulent or innocent misrepresentation.

To establish a claim for either fraudulent or innocent misrepresentation under Michigan law, a plaintiff is required to show reasonable reliance. See Dedvukaj v. Equilon Enter. L.L.C., 301 F. Supp. 2d 664, 671 (E.D. Mich. 2004). However,

29

"[r]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." Cook v. Little Caesar Enter., Inc., 210 F.3d 653, 658 (6th Cir. 2000) (holding that the signing of the franchise agreement with a merger/integration clause precluded plaintiff's claim of reasonable reliance on prior representations for both his fraudulent and innocent misrepresentation claims) (citing 3 P.M. Inc. v. Basic Four Corp., 591 F. Supp. 1350, 1366 (E.D. Mich. 1984) (interpreting Michigan law and holding that a plaintiff may not reasonably rely on prior oral statements that directly contradict the terms of a written contract)).  In this case, the License Agreement entered into by Versus contains a merger/integration clause.  Thus, before the sufficiency of Versus' tort claims can be evaluated, the License Agreement must be interpreted to determine the effect of that clause.  Because sufficient information regarding the applicable law to be applied to interpret License Agreement is not available at this time, see supra VI(A), Hill-Rom's Motion to Dismiss Counts II, III, IV, and V of the Second Amended Complaint will be denied.

B.

Hill-Rom also moves to dismiss Count VI of Versus' Second Amended Complaint contending that the Court lacks subject matter jurisdiction over this claim.  Count VI alleges:

In the event that the Patent License is rescinded, [Hill-Rom] and Visonic are without the protection of the release and the license of the

30

Patent License, and [Hill-Rom] has infringed at least one claim of each of the 314, 195, 139 and 791 Patents by, at least, directly making, using, selling and/or offering to sell during the period of at least six years prior to the date of this Complaint, the COMposer Communication System which has included locator badges, and [Hill-Rom] and Visonic have infringed at least one claim of each of the 314, 195, 139 and 791 Patents by, at least, directly making, using, selling and/or offering to sell COMLinx, including those actions within the scope of the Patents claims which would have been licensed by the Patent license but for the rescission of the Patent License, and/or inducing or contributing to the infringement of the Patent Claims.

(1116 Case, 2d Am. Compl. ¶ 82.)  Hill-Rom contends this is a hypothetical claim and thus is not a "case or controversy" ripe for consideration by this Court.  See U.S. Const. art. III § 2; Gasner v. Bd of Supervisors, 103 F.3d 351, 360-61 (4th Cir. 1996) ("Article III of the Constitution limits the judicial power of the United States to the resolution of 'cases' and 'controversies.'") (quoting Valley Forge Christian Coll. v. Am.'s United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S. Ct. 752 (1982)).

Hill-Rom's contention that hypothetical claims where the injury has not yet occurred do not satisfy the requirements of Article III of the Constitution is entirely correct.  Gasner, 103 F.3d at 360.  However, Hill-Rom misunderstands the nature of Versus' claim in Count VI.  Rather than making a claim that some injury may happen in the future, Versus is claiming that the injury – the infringement of its patents without a valid license – has already occurred.  In Gasner v. Board of Supervisors, the Fourth Circuit dismissed a plaintiff's claim as hypothetical because the plaintiff failed to assert in the complaint that the interest was in fact taxable,

31

but rather alleged only "if it be later deemed" taxable.  Id. at 360-61.  Versus,

however, has explicitly made a claim that the License Agreement is invalid and

should be rescinded.  Then, Versus alleges that because Hill-Rom does not possess

a valid license to do so, it is infringing on its patents.  The determination that the

License Agreement is invalid is not a hypothetical claim, but rather a precondition

to Versus' infringement claim.  See, e.g., Rhone-Poulenc Agro, S.A. v. DeKalb

Genetics Corp., 272 F.3d 1335 (Fed. Cir. 2001) (explaining that the district court

bifurcated the case into two different jury trials because the trade secret and

patent issues were dependent on the outcome of the fraud and licensing issues),

vacated, 538 U.S. 974 (2003), reaffirmed on remand, 345 F.3d 1366 (Fed. Cir

2003), cert. denied, 540 U.S. 1183, 124 S. Ct. 1423 (2004).  Because Versus'

patent infringement claim in Count VI is not hypothetical, Hill-Rom's Motion to

Dismiss Count VI for lack of subject matter jurisdiction will also be denied.

VII.

Visonic Ltd. and Visonetix Ltd. also move to dismiss Versus' Third Party

Complaint against them in the 1227 Case.[23]  Visonic Ltd. and Visonetix Ltd

contend that on January 5, 2005, Visonic Ltd. and Visonetix Ltd assigned all of

their rights in the '471 patent to Visonic Technologies, Ltd.  These assignments

were recorded with the U.S. Patent and Trademark Office. (Defs.' Mot. to Dismiss

3d Party Compl., Ex. A.)  Subsequent to this assignment, on January 28, 2005,

---

[23] No opposition as has been filed to Defendants' Motion to Dismiss.

Versus filed its Third Party Complaint for declaratory judgment adding Visonic Ltd. and Visonetix Ltd. as third party defendants in this action. Because these defendants retained no interest in the '471 patent after assignment, there is no longer a case or controversy remaining and Visonic Ltd and Visonetix Ltd will be dismissed pursuant to Rule 12(b)(1) of the Federal Rule of Civil Procedure. See Foseco, Inc. v. Consol. Aluminum Corp., 1989 WL 138663, at *1-2 (E.D. Mo. April 13, 1989) (dismissing third party complaint for lack of subject matter jurisdiction because a case or controversy no longer existed given that patent-in-issue has been assigned); c.f. DSM Resins, U.S., Inc. v. EMS- Am. Grilon Inc., 1990 WL 116890, at *1 (D.S.C. Feb. 28, 1990) (citing Proctor & Gamble Co. v. Kimberly-Clark Corp, 684 F. Supp. 1403, 1404 (N.D. Tex 1987) (complete assignment of rights in patent divests assignor of ownership, entitling assignee to sue without joining assignor)).

VIII.

Finally, in its motion filed on January 26, 2006, Hill-Rom requests leave to amend its Complaint to add Patient Care Technology Systems, LLC ("PCTS") as a Defendant [1227 Case, Doc. #73]. In support of its motion Hill-Rom explains it has recently become aware that PCTS acquired Defendant HIT at the end of 2004. Hill-Rom believes this acquisition involved an accused product previously developed and marketed by HIT. Additionally, Hill-Rom contends that although it is unaware of the exact corporate status of HIT, it continues to exist in some form after the

33

acquisition. Hill-Rom has contacted Defendant seeking consent to the addition of PCTS on several occasions and received no response. Additionally, no response has been filed to Hill-Rom's motion with this Court. Thus, Hill-Rom's unopposed motion to add PCTS as a defendant in this matter will be granted. See Fed. R. Civ. P. 15(a) ("leave [to amend] shall be freely given when justice so requires").

IX.

For the foregoing reasons, the 1116 Case will be consolidated with the 1227 Case up to the point of trial. At that time the issue will be revisited.

Versus' Motion for Leave to Amend Complaint to Join a Necessary Party [1116 Case, Doc. #203] will be GRANTED. Thus, Hill-Rom's Motion to Dismiss for Failure to Join an Indispensable Party [1116 Case, Doc. #26] is now MOOT.

Hill-Rom's Motion to Dismiss and/or Strike Versus' Sixth Affirmative Defense and Counterclaim Counts II and V [1227 Case, Doc. #30], will be GRANTED, and Hill-Rom's unopposed Motion to Amend Complaint to Add Defendant Patient Care Technology Systems, LLC [1227 Case, Doc. #73] will be GRANTED.

Visonic's Motion to Dismiss for Lack of Personal Jurisdiction [1116 Case, Doc. #138] will be GRANTED and Visonic Technologies, Ltd. will be DISMISSED as a party to this case. Additionally, Third Party Defendants' unopposed Motion to Dismiss Party [1116 Case, Doc. #166] will be GRANTED and the claims against Visonic Ltd. and Visonetix Ltd. will be DISMISSED.

Finally, Hill-Rom's Motion to Dismiss Counts II through VI of Versus'

34

Complaint [1116 Case, Doc. #140] will be DENIED at this time.

This the day of June 2, 2006

    /s/ N. Carlton Tilley, Jr.
United States District Judge